1  Shaun Setareh (Cal. State Bar No. 204514)
    shaun@setarehlaw.com
2  Thomas Segal (Cal. State Bar No. 222791)
    thomas@setarehlaw.com
3  Farrah Grant (Cal. State Bar No. 293898)
    farrah@setarehlaw.com
4  SETAREH LAW GROUP
   9665 Wilshire Boulevard, Suite 430
5  Beverly Hills, California 90212
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff
   ROBERT W. AHLSTROM

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11

12  ROBERT W. AHLSTROM, on behalf of          Case No. 5:19-cv-03435-BLF
    himself, all others similarly situated,
13                                            Assigned For All Purposes to the Honorable
                  Plaintiff,                  Beth Labson Freeman, Courtroom 3
14
                  v.                          **NOTICE OF MOTION AND MOTION FOR**
15                                            **PRELIMINARY APPROVAL OF CLASS**
                                              **ACTION SETTLEMENT AND**
16  DHI MORTGAGE COMPANY LTD. L.P., a         **CERTIFICATION OF SETTLEMENT**
    Texas limited partnership; and DOES 1     **CLASS; MEMORANDUM OF POINTS AND**
17  through 50, inclusive,,                    **AUTHORITIES IN SUPPORT THEREOF**

18                Defendants.                 [Filed Concurrently with the Declaration of
                                              Shaun Setareh and [Proposed] Order]
19

20                                            Date:   June 27, 2024
                                             Time:   9:00 a.m.
21                                            Place:  Courtroom 3

22

23

24

25

26

27

28

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 27, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, THE ESTATE OF ROBERT AHLSTROM THROUGH HIS SUCCESSOR IN INTEREST KIANNA AHLSTROM ("Plaintiff") and Defendant DHI MORTGAGE COMPANY LTD. L.P. ("DHI" or "Defendant") will and do hereby move this Court to: (1) conditionally certify the settlement class; (2) preliminarily approve the parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiff as the Class Representative, Setareh Law Group as the Class Counsel, and ILYM Group, Inc., as the Settlement Administrator; (4) approve the form of Class Notice and proposed timeline for administration; and (5) schedule a hearing on the final approval of the Settlement.

This motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within the range of possible final approval.

This motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes, the accompanying Declaration of Shaun Setareh, all accompanying exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and arguments as may be presented at the hearing.


DATED:  March 18, 2024                          SETAREH LAW GROUP


                                                */s/ Farrah Grant*
                                                SHAUN SETAREH
                                                THOMAS SEGAL
                                                FARRAH GRANT
                                                Attorneys for Plaintiff
                                                Robert Ahlstrom

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND ...............................................................................2

        A.      Factual and Procedural Background .............................................................2

        B.      Plaintiff's Assessment of Damages ..............................................................4

III.    THE SETTLEMENT ..............................................................................................5

        A.      THE SETTLEMENT CLASS ......................................................................5

        B.      GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS............................5

        C.      SCOPE OF THE CLASS MEMBER RELEASES ......................................7

        D.      NOTICE PROCEDURES ............................................................................8

        E.      PAYMENT OF SETTLEMENT AMOUNTS..........................................9

        F.      TAX TREATMENT ...................................................................................10

IV.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
        APPROVAL ...........................................................................................................10

        A.      NORTHERN DISTRICT PROCEDURAL GUIDANCE .....................................11

                1.      Differences Between the Settlement Class and the Pled Class ..................11

                2.      Other Cases Affected by the Settlement ......................................................12

                3.      Comparable Outcome..................................................................................12

                4.      Estimate of the Number and /or Percentage of Class Members
                        Expected to Submit a Claim........................................................................12

                5.      Settlement Administration ..........................................................................12

                6.      Reversion to Defendant...............................................................................13

                7.      Notice ..........................................................................................................13

                8.      Opt Outs ......................................................................................................13

                9.      Objections ...................................................................................................13

                10.     Cy Pres ........................................................................................................13

                11.     Class Action Fairness Act (CAFA) and Similar Requirements ..................14

                12.     Class Counsel's Lodestar ...........................................................................14

                        a.      A Reasonable Result Was Achieved on Behalf of the Class ..........14

b.    The Experience, Reputation, and Ability of Class Counsel............17

c.    The Effort Required by the Litigation Justifies the Fee.................18

d.    The Complexity of the Legal and Factual Issues ...........................18

e.    Class Counsel Assumed Substantial Risk......................................18

13.    Plaintiff's Incentive Award ......................................................................19

B.    The Settlement is the Product of Informed, Non-Collusive Negotiations .............19

C.    The Settlement Has No "Obvious Deficiencies" ....................................................19

D.    The Settlement is Within the Range of Possible Approval.....................................20

1.    Liability Is Contested, and the Settlement Provides Class Members
with Substantial Monetary Relief.................................................................21

2.    The Class Release Is Appropriate Given Plaintiff's Claims ......................21

E.    The PAGA Allocation Is Proper .............................................................................21

F.    Conditional Certification of a Settlement Class and Collective for Settlement
Purposes Only Is Appropriate .................................................................................22

1.    The Numerosity Requirement Is Met...........................................................23

2.    Commonality and Typicality Requirements ................................................23

3.    Adequacy of Representation ........................................................................23

4.    Class Certification For Settlement Purposes Is Proper Under Rule
23(b)(3)........................................................................................................24

G.    The Notice Is Fair and Adequate ............................................................................24

V.    **CONCLUSION**.............................................................................................................**25**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

# TABLE OF AUTHORITIES

<u>Cases</u>

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ...............................24

*Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) .............................................................................................................................................16

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014) ........................................................16

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995) ......................................17

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)...........................................22, 23

*Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980) ..........23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)...........................................10, 23, 24

*Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) ...........................................................................................................................17

*Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)....................15

*Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) .....................................................................18

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................23

*LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 ............................20

*Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997)........................................................................................................................15, 20

*Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980) ......................................24

*Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638 .......................5

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) ..........................................................16

*Newberg on Class Actions* 4th (2002) ("*Newberg*") ................................................................10, 11

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994) .............................................................................................................................................11

*O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016) ....................22

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ...................................................................14

*Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ...................................................17

*Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948 ................................................5

*Saechao v. Landrys, Inc.,* 2016 WL 3227180 (N.D. Cal. 2016)...................................................22

*Serrano v. Priest*, 20 Cal.3d 25, 49 (1977) ....................................................................14, 18

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015)....................................................................................................20

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ...............................11, 20

*Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 ............................................................................................................................20

*Traffic Exec. Ass'n-Eastern Railroads,*, 627 F.2d 631, 633-34 (2d Cir. 1980) ..................................11

*Trietsch v. Caliber Home Loans Inc* ......................................................................................12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)...................................................10

*Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016) ...............................................22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ...........................................14, 18

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001) ...............................................18

Statutes

29 U.S.C. § 201, *et seq.* ........................................................................................................3

29 U.S.C. § 216(b) ...............................................................................................................1

Bus. & Prof. Code §§ 17200 *et seq.* .....................................................................................3, 8

Cal. Lab. Code § 2699(e)(2) ...............................................................................................22

Cal. Lab. Code § 2699(f)(2) ...............................................................................................22

Lab. Code §§ 201 ...........................................................................................................2, 8

Lab. Code §§ 202 ...........................................................................................................2, 8

Lab. Code §§ 203 ...........................................................................................................2, 8

Lab. Code §§ 204 ...........................................................................................................2, 8

Lab. Code §§ 223 ...........................................................................................................2, 8

Lab. Code §§ 226.7 .......................................................................................................2 ,8

Lab. Code §§ 512 ...........................................................................................................2, 8

Lab. Code §§ 1198 .........................................................................................................2, 8

Lab. Code § 510 .............................................................................................................2, 8

Lab. Code §§ 1194 .........................................................................................................2, 8

Lab. Code §§ 1194.2 .........................................................................................................2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

Lab. Code §§ 1197 ..................................................................................2, 8

Lab. Code §§ 1997.1 ...............................................................................2, 8

Lab. Code §§ 226(a) ...............................................................................2, 8

Labor Code §§ 226(e) .................................................................................16

Labor Code §§ 2699 .....................................................................................5

Labor Code §§ 210 .......................................................................................8

Labor Code §§ 212 .......................................................................................8

Labor Code §§ 225.5 ....................................................................................8

Labor Code §§ 226.3 ....................................................................................8

Labor Code §§ 256 .......................................................................................8

Labor Code §§ 558 .......................................................................................8

Labor Code §§ 1199 .....................................................................................8

Labor Code §§ 2699(f) .................................................................................8

Rules

Fed. R. Civ. P. 23(a)(2) ..............................................................................23

Fed. R. Civ. P. 23(b)(3) ..............................................................................24

Fed. R. Civ. P. 23(e) .............................................................................10, 24

Fed. R. Civ. P.23(a) ....................................................................................24

Fed. R. Civ. P.23(a)(3) ...............................................................................23

Fed. R. Civ. P.23(a)(4) ...............................................................................23

Fed. R. Civ. P.23(b) ...................................................................................24

Fed. R. Civ. P.23(c)(2)(B) ..........................................................................24

Fed. R. Civ. P. 23(c)(1) ..............................................................................22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   <u>INTRODUCTION</u>

After years of litigation, this motion seeks preliminary approval of the class action settlement of this wage-and-hour action between Plaintiff THE ESTATE OF ROBERT AHLSTROM THROUGH HIS SUCCESSOR IN INTEREST KIANNA AHLSTROM ("Plaintiff"), on behalf of the estate and the Class and Collective Members described below, and Defendant DHI MORTGAGE COMPANY LTD. L.P. ("Defendant" or "DHI") (all parties, collectively, are the "Parties").

As the result of arm's-length negotiations with the assistance of Hon. Brian Walsh (Ret.), an experienced mediator with expertise in mediating complex wage and hour class actions, the Parties have reached a fair and reasonable class and collective action settlement of Plaintiff's claims.  Pursuant to the Settlement Agreement ("Agreement") (Setareh Decl. Exh. A), Plaintiff now requests that the Court enter an order: (1) preliminarily approving the Agreement; (2) certifying the settlement class only for purposes of settlement under the Agreement; (3) appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and ILYM Group, Inc. ("ILYM") as the Settlement Administrator; (4) approving and directing the mailing of the Class Notice and related materials; and (5) scheduling a final approval hearing.

The Agreement provides for a Gross Settlement Amount of **$300,000** (the "Gross Settlement Amount" or "GSA"). (Agreement, § 9(a).)  No amount of the GSA shall revert to Defendant. (*Id.*)  No Class Member will have to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to them. (*Id.*)  However, as required under 29 U.S.C. section 216(b), Collective Members will have to return an "opt-in" form in order to participate in the settlement.  (Agreement, § 7(f).)  After 180 days, any unclaimed funds will be distributed to Alliance for Children's Rights as a *cy pres* recipient.  (*Id.*, § 29.)  Defendant estimates that there are 48 Class Members who worked approximately 9,466 workweeks during the relevant time period.  (Agreement, § 9(b).)

The Net Settlement Amount ("NSA") expected to be paid to Class Members – after all Court-approved deductions from the GSA, *i.e.*, Class Counsel fees of $100,000 (1/3 of the GSA) and costs of up to $55,000, settlement administration costs estimated to be $3,500, Plaintiff's enhancement award of $10,000, and $15,000, which is 75% of the $20,000 earmarked for the PAGA claims – is **$116,500**.

1  (Agreement, § 9(c).)   The average estimated Settlement Share for each Class Member is **$2,427.08**
2  **($116,500 / 48)**.

3      As discussed below, the Settlement reached here is a good result given the claims at issue in
4  this case, the risk that no class would be certified, Defendant's defenses on the merits, and the
5  significant monetary amount obtained for the Class, which compares favorably to similar settlements
6  approved by other courts.

7  **II.    RELEVANT BACKGROUND**

8      **A.    FACTUAL AND PROCEDURAL BACKGROUND**

9      Defendant DHI MORTGAGE COMPANY LTD. L.P. is a mortgage lending company who
10  employed mortgage loan officers. Defendant hired Plaintiff Robert Ahlstrom on or around July 2015
11  as a loan officer.  (Declaration of Shaun Setareh ("Setareh Decl.", ¶ 4.)

12      Plaintiff's class action was originally filed against DHI Mortgage Company GP, Inc. and D.R.
13  Horton, Inc. on August 2, 2017 in the U.S. District Court, Northern District of California, Case no.
14  3:17-cv-04383-BLF. On November 30, 2018, the Court granted Defendants' Motion to Compel
15  Arbitration and dismiss the action without prejudice, as the Court found that there was a binding
16  arbitration agreement. Defendants asserted that D.R. Horton, Inc. is the parent company of DHI
17  Mortgage Company, GP, Inc. and DHI Mortgage Company, Ltd. Defendants further asserted that
18  Plaintiff' Robert Ahlstrom was employed by DHI Mortgage Company, Ltd., L.P. (*Id.* ¶ 5.)

19      On October 6, 2017, Plaintiff filed a Representative Action Complaint ("Plaintiff's PAGA
20  Action") in the Santa Clara County Superior Court, Case no. 17stcv317032, against Defendant for civil
21  penalties pursuant to the Private Attorney General Act based on the same alleged Labor Code violations
22  as the Class Action. (*Id.* ¶ 6.)

23      In order to file suit against the correct employer of Plaintiff Robert Ahlstrom, On March 27,
24  2019, Plaintiff filed suit in Alameda Superior Court, asserting the following claims against Defendant: 1)
25  Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest
26  Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223,
27  510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Provide Accurate Written Wage Statements
28  (Lab. Code §§ 226(a)); 5) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 6)

Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); 7) Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201, *et seq.*); 8) Breach of Written Contract; and 9) Breach of the Implied Covenant of Good Faith and Fair Dealing. (*Id.* ¶ 7.)

On June 17, 2019, Defendant removed the Action to the U.S. District Court for the Northern District of California (the "Northern District"). (ECF 1.)

On July 22, 2019, Defendant filed its motion to compel arbitration. (ECF No. 16). The matter was fully briefed and the Court granted the motion to compel arbitration and to dismiss on or around January 16, 2020. (ECF No. 26). Plaintiff appealed the order granting the motion to compel to the 9th Circuit. (ECF No. 27). On December 29, 2021, the Court of Appeals reversed the district court's order dismissing the complaint and granting the motion to compel arbitration. The Court of Appeal found that the arbitration agreement did not constitute a properly formed agreement between Plaintiff and DHI Mortgage Company, Ltd., L.P., because Plaintiff had no employment relationship with D.R. Horton, the purported signatory. (ECF No. 29).

Around October 30, 2021, the Court in the PAGA action granted Defendant's summary judgment motion. Plaintiff appealed, filing an opening appellant's brief on or around June 24, 2022. The parties agreed to stay the appellate briefing pending mediation. (Setareh Decl. ¶ 11.)

On October 13, 2022, Plaintiff's counsel filed the Suggestion of Death to inform the Court in the Class Action case of Mr. Ahlstrom's passing. (ECF No. 47). Plaintiff's motion to substitute the estate of Robert W. Ahlstrom was fully briefed. On January 18, 2023, the Court granted Plaintiff's motion to substitute the Estate of Robert W. Ahlstrom through his daughter, Kianna Ahlstrom as Plaintiff and class representative in place of Robert W. Ahlstrom. (ECF No. 57).

On February 16, 2023, the Parties participated in a full-day private, arm's-length mediation with Hon. Brian Walsh (Ret.), serving as neutral. (Agreement, § 3.) Prior to the February 16, 2023 mediation, the Parties engaged in formal discovery and also engaged in an informal exchange of information. Defendant provided Plaintiff with documentation regarding its policies regarding timekeeping, overtime, meal periods and rest breaks, and wage statements, as well as time and payroll records for a sample of putative class, collective, and PAGA members. Furthermore, counsel for the parties conferred extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to

reaching a settlement. (*Id.*, § 4.)

At the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiff's claims, and the legal bases for the claims and defenses. The Parties were able to reach a settlement following the February 16, 2023, mediation. (Setareh Decl., ¶ 14.)

## B.     PLAINTIFF'S ASSESSMENT OF DAMAGES

The following chart provides the estimated potential recovery on a class basis that Plaintiff believes he could reasonably achieve *if he were to prevail on all claims*:

| **Plaintiff's Estimated Potential Recovery** | | |
|---|---|---|
| Putative Class Members: 48; Total Workweeks: 8,573; Avg. Reg. Rate: $41.32; Avg. OT Rate: $61.98 | | |
| **Claim** | **Estimated Potential Recovery** | **Calculations for Estimated Potential Recovery** |
| Off-the-Clock before and after shifts | $1,062,709.08 | 8,573 workweeks x 2 hrs/week off-the-clock x $61.98/hr Avg. OT rate |
| Off-the-Clock due to weekend on-call claim | $243,023.58 | 1,307 weekend days x 3 hrs/week off-the-clock x $61.98/hr Avg. OT rate |
| Meal Period Premiums | $147,747.92 | 35,757 meal period eligible shifts x $41.32/hr Avg. Reg. rate x 10% viol. rate |
| Rest Period Premiums | $156,838.32 | 37,957 rest period eligible shifts x $41.32/hr Avg. Reg. rate x 10% viol. rate |
| Regular Rate | $140,838.58 | Calculated by Plaintiff's expert based on sample data provided for mediation |
| Late Pay (Labor Code § 203) Penalties | $238,003.20 | 24 terminated during class period x $41.32/hr Avg. Reg rate x 8 hours x 30 days |
| Wage Statement (Labor Code § 226) Penalties | $112,000.00 | 28 pay periods x maximum penalty of $4,000 per person x 100% violation rate |
| **Maximum Total Potential Recovery** | **$2,101.160.68** | |

(Setareh Decl., ¶ 23.) However, Defendant contends that Plaintiff would not have recovered any of these amounts, due to their defenses and the likelihood that the Court would not certify class claims. (*Id.*, ¶16.)

Plaintiff notes that Civil penalties are estimated and interest is not included in this analysis. This is proper because, first, PAGA penalties are discretionary (see Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. (See *Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948, 955; see also *Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638, at *7(court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).) An estimate of damages for the breach of contract/implied covenant of good faith claim for failure to pay commissions claim is not included as to Plaintiff's understanding the failure to pay commissions claim was unique to Plaintiff and at this time Plaintiff's counsel does not have reason to believe that others had similar issues with commissions. (Setareh Decl., ¶ 23.)

## III.  THE SETTLEMENT

The following is a summary of the material terms of the Settlement:

### A.  THE SETTLEMENT CLASS

The class to be conditionally certified for settlement is defined as all DHI California non-exempt employees who worked as mortgage loan officers or similar position from March 27, 2015 through the date of preliminary approval. (Agreement, § 7c.)

The PAGA Group is all DHI non-exempt employees who worked as mortgage loan officers or similar positions in California from August 4, 2016 through the date of the trial court judgment date (i.e. November 2021). (*Id.* § 7d.)

The FLSA Collective members in the Class Action are all DHI California non-exempt employees who worked as mortgage loan officers or similar positions from March 27, 2016 through the date of conditional approval. (*Id.* § 7f.)

### B.  GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS

Defendant will pay a maximum aggregate GSA of **$300,000**, subject to any adjustment based on workweeks. (Agreement, § 9(a).)  The "Net Settlement Amount" is defined as the Gross Settlement Amount, less all of the following: (1) all costs of settlement administration, estimated to be approximately $3,500; (2) attorneys' fees of up to one third of the Gross Settlement Amount ($100,000); (3) Class Counsel's reasonable out-of-pocket costs (not to exceed $55,000); (5) the Class Representative Service Payment Award, not to exceed the sum of $10,000 to Plaintiff Robert Ahlstrom, through his next of kin Kianna Ahlstrom; (6) $15,000, which is seventy-five percent (75%) of the $20,000 earmarked for the release of Plaintiff's and each PAGA Group Member's PAGA claims, which shall be paid to the California Labor and Workforce Development Agency ("LWDA"). (*Id.*, § 9(c).)

After all Court-approved deductions from the GSA, it is estimated that the NSA payable to Class Members will be **$116,500** out of the **$300,000** GSA. The average estimated Settlement Share for each Class Member is **$2,427.08 ($116,500 / 48)**.

Each Settlement Share shall be determined as follows:

   a.  The Claims Administrator shall assign to each Class Member a "Settlement Ratio," which shall be a fractional number comprised of (i) that person's Individual Work Weeks as the numerator, and (ii) the aggregate total of all Class Members' Individual Work Weeks as the denominator. The Claims Administrator shall assign to each Settlement Class Member the "Settlement Share" which shall be calculated by multiplying that Settlement Class Member's Settlement Ratio by the amount allocated to Class Members from seventy five percent (75%) of the Net Settlement Amount.

   b.  The Claims Administrator shall assign to each Collective Member a "Settlement Ratio," which shall be a fractional number comprised of (i) that person's Individual Work Weeks as the numerator, and (ii) the aggregate total of all Collective Members' Individual Work Weeks as the denominator. The Claims Administrator shall assign to each Collective Member the "Settlement Share" which shall be calculated by multiplying that Collective Member's Settlement

6

Ratio by the amount allocated to Class Members from twenty-five percent (25%) of the Net Settlement Amount.

c. The "**PAGA Allocation**." PAGA Group Members will receive a pro rata share of the $5,000 portion of the $20,000 PAGA payment. They will receive this payment and be bound by the PAGA release whether or not they request exclusion from the settlement.

(Agreement, § 10(a-c).)

Should the number of workweeks at time of signing the settlement agreement exceed the estimated 8,573 workweeks by more than 5%, the Total Settlement Amount will either increase proportionally beyond the 5% increase, or the end date of the Class Period will be adjusted so that the number of workweeks does not exceed 105% of the estimate. DHI shall have, in its sole discretion, which option to select. (Agreement, § 9(b).)

## C.    SCOPE OF THE CLASS MEMBER RELEASES

Upon the Settlement Date, Participating Class Members release DHI Mortgage Company Ltd L.P., its present, former, and future parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective past and present members, shareholders, directors, officers, employees, agents, servants, registered representatives, insurers and attorneys (collectively hereafter, the "Released Parties") from any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, that arise out of or reasonably relate to the factual allegations in the operative complaints and the prior complaints in this matter including claims for failure to pay all wages due, including minimum wages and overtime; failure to provide meal and rest periods, failure to furnish accurate itemized wage statements; and failure to pay all wages due to discharged and quitting employees; breach of written contract for alleged failure to pay allegedly earned commissions at termination; and breach of the implied covenant of good faith and fair dealing related to same. The released claims include, but are not limited to, claims brought under state the California Labor Code, California Business and Professions Code sections 17200-17208, and the Industrial Welfare Commission Wage Order. Such claims include claims for wages, statutory penalties, civil penalties, damages, liquidated damages, or other relief

under the California Labor Code, PAGA, relief from unfair competition under California Business and Professions Code section 17200 *et seq.*; attorneys' fees and costs; and interest. (Agreement, § 33(a).)

Upon the Settlement Date, Participating Collective Members fully release and discharge the Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, that arise out of or reasonably relate to the factual allegations in the operative complaints and the prior complaints in this matter including claims for failure to pay all wages due, including minimum wages and overtime; failure to keep required, and accurate records of all hours worked The released claims include, but are not limited to, claims brought under federal law, the  Fair Labor Standards Act (the "FLSA").  Such claims include claims for wages, statutory penalties, civil penalties, damages, liquidated damages, or other relief under the  FLSA, relief from unfair competition under California Business and Professions Code section 17200 *et seq.*; attorneys' fees and costs; and interest. (Agreement, § 33(b).)

The State of California and all PAGA Group Members fully releases and discharges the Released Parties from claims for civil penalties under PAGA under Labor Code sections 201, 202, 203, 204, 210, 212, 223, 225.5, 226(a), 226.3, 226.7, 256, 510, 512, 558, 1194, 1197, 1197.1, 1198, 1199, 2699(f) that arise out of or reasonably relate to the factual allegations in the operative complaints, the notice letters to the California Labor Workforce and Development Agency ("LWDA"), and the prior complaints in the PAGA Action. (Agreement, § 33(c).)

**D.     NOTICE PROCEDURES**

Within sixty (60) days of the Preliminary Approval Date, the settlement administrator ILYM will mail the Notice of Settlement to each Settlement Class Member.  (*Id.* § 28.) The Notice of Settlement shall be sent by first-class mail to each Settlement Class Member's current or last known address on file with Defendant, following an updated review of the National Change of Address Registry by the Administrator. The Administrator shall also mail the Collective Members the FLSA opt-in form within (60) days of the Preliminary Approval Date. The proposed Class Notice and FLSA opt-in form are attached as **Exhibits "1"** and **"2"** to the Agreement. The Class Notice will, among other things, provide Class Members with information regarding the Action and a summary of the Settlement's

principal terms, including without limitation allocation of the GSA. Each Class Notice also will inform the Class Members of their rights and the manner and deadline to dispute the data in the Notice of Estimated Settlement Award form (*e.g.*, Workweeks worked or updated contact information) or object to the Settlement. The Class Notice will also inform Class Members of the claims to be released. (*Id.*) The Class Notice will also advise that that they may opt out of the Settlement by following the opt-out procedures stated therein. The FLSA opt-in form will advise that that they may opt into the Settlement by following the opt-in procedures contained therein and will include a Consent to Join Settlement Form that they may use to do so.

Within 45 days after preliminary approval of the Settlement is granted by the Court, Defendant will provide the Settlement Administrator each Class Member's name, last known mailing address, Social Security Number, the number of Workweeks attributable to the Class Member as part of the California Class and/or the FLSA Class as reflected in Defendant' records during the relevant period. (*Id.*,§23).)

The Settlement Administrator will mail the Class Notice to each Class member and FLSA opt-in form to each Collective member. (*Id.*, § 24, Exs. 1-2.)

All Class Members will have 45 calendar days after the Class Notice Packets are first mailed (the "Response Deadline") to opt out, object to the Settlement or to dispute the information in the Notice. (*Id.*, §§ 30(a), 31(b), 32(b).) Any Class Member who does not timely return a properly completed request for exclusion will remain in the Class and be bound by the Settlement (including payment of their applicable Settlement Share and release of the Released Claims). (*Id.*) FLSA Collective Members will have 45 days to complete and submit a claims form, the Consent to Joint Settlement Form (*i.e.*, opt in or request inclusion). (*Id.*, § 7(f).) Any FLSA Class Member who does not timely return a properly completed claims form will be excluded from the FLSA Class and be deemed to waive any right to participate in the Action and the Settlement.

All Notice of Settlement mailing packets returned with forwarding addresses affixed thereto will be utilized by the Administrator to locate the Settlement Class Members through reasonable and customary skip tracing efforts used in the administration of such settlements. (*Id.*, § 28(a).)

### E.    PAYMENT OF SETTLEMENT AMOUNTS

After final approval is granted, Defendant will transfer the GSA to the Settlement Administrator.

(*Id.* § 17).)  The Settlement Administrator will pay to Class Members the Settlement Shares; to Plaintiff, the Class Representative Payment; to Class Counsel, the Class Counsel Fees and Expenses Payment; and to the Settlement Administrator, its reasonable fees and expenses.  (*Id.*)

Class Members must cash their Settlement Share checks within 180 calendar days after they are mailed.  (*Id.*, § 29.)  If a Class Member fails to cash the check for his or her Settlement Share within 180 days after it is mailed, the Settlement Administrator will cancel the check(s) and distribute those funds to Alliance for Children's Rights as a *cy pres* recipient.  (*Id.*)

### F.    TAX TREATMENT

Pursuant to the Agreement, each California Class Member's Settlement Share will be treated as follows for tax purposes: One-half (1/2) of all Settlement Share payments to Participating Class Members shall be considered wages and shall be subject to the withholding of all applicable local, state and federal taxes.  One-half (1/2) of all Settlement Share payments to Participating Settlement Class Members and 100% of the PAGA Allocation, if applicable, shall be considered non-wages for the settlement of interest and statutory and civil penalty claims.  (*Id*. § 12(a-b).)

## IV.    <u>THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL</u>

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted.)

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile.  To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as the "reasonable range."  *See, e.g., North*

1   *County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App.4th 1085, 1089-90 (1994); *In re*

2   *Traffic Exec. Ass'n-Eastern Railroads*,, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25.

3   In sum, preliminary approval of a settlement and notice to the proposed class (or collective) is appropriate:

4   "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations,

5   [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives

6   or segments of the class, and [4] falls with the range of possible approval…" *In re Tableware Antitrust*

7   *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

8       The Settlement proposed by the parties meets the standards for preliminary approval.

9   **A.    NORTHERN DISTRICT PROCEDURAL GUIDANCE**

10          **1.    <u>Differences Between the Settlement Class and the Pled Class</u>**

11      The operative complaint describes the class as "All persons employed by Defendants and/or any

12  staffing agencies and/or any other third parties who worked in hourly or non-exempt positions in California

13  during the Relevant Time Period". The Relevant time period in the complaint is defined as "the time

14  period beginning four years prior to August 2, 2017 until judgment is entered." (ECF No. 1.1). Thus,

15  the relevant time period would begin August 2, 2013.

16      The class to be conditionally certified for settlement is defined as all DHI California non-exempt

17  employees who worked as mortgage loan officers or similar position from March 27, 2015 through

18  the date of preliminary approval. (Agreement, § 7c.)

19      The Settlement Class is slightly narrower than pled in that individuals employed by staffing

20  agencies or third parties are not included. This is because there were no mortgage loan officers employed

21  through staffing agencies during the relevant time period.   (Setareh Decl. ¶ 52.)

22      Also, the Settlement Class is narrower in that only individuals who worked as mortgage loan

23  officers or similar positions are included in the settlement rather than all non-exempt hourly employees.

24  This is to provide clarification of the plead class definition, so that the class only includes those people

25  subject to claims and theories at issue. The allegations in the complaint relate to the work done by

26  Mortgage Loan Officers, and individuals with similar positions, such as working as "Loan Officers on

27  Duty" on assigned weekends.  (*Id*. ¶ 53.)

28

The Settlement Class is narrower in that the complaint class period starts in August 2, 2013 and the settlement class period starts March 27, 2015. The operative complaint filed on March 27, 2019 alleged that the class period should begin August 2, 2013, which is 4 years prior to the filling of the *initial* complaint, case No. Case no. 3:17-cv-04383-BLF. Defendant adamantly argues that the relevant time period in this case could be no earlier than 4 years prior to the filing of the lawsuit, i.e. March 27, 2015. The parties agreed that it was proper for purposes of settlement of settlement for the class to begin 4 years prior to the filing of the instant lawsuit. (Setareh Decl. ¶ 54.)

Lastly, the Settlement Class is narrower in that the complaint class ends when judgment is entered while the settlement class period ends on the date of preliminary approval. In reality, if a class was certified, the class definition would only include people employed as of the time of class certification. Therefore, it makes sense to end the class period as of preliminary approval. (Setareh Decl. ¶ 55.)

The same claims pled in the complaint will be released by the settlement. (Agreement, § 33.)

### 2. <u>Other Cases Affected by the Settlement</u>

Defendant has represented that they are not aware of other cases affected by the settlement. (Setareh Decl. ¶ 56.)

### 3. <u>Comparable Outcome</u>

Another case with a FLSA settlement for Mortgage employees is *Trietsch v. Caliber Home Loans Inc.* U.S. District Court Northern District of Texas, Case No. 3:16-cv-00483-N which involved 541 class members and a $3,500,000 non-reversionary common fund. (Setareh Decl. ¶ 57.)

### 4. <u>Estimate of the Number and /or Percentage of Class Members Expected to Submit a Claim</u>

ILYM estimates a 30%-50% claim form return rate with respect to the FLSA Collective Members. (Setareh Decl., ¶ 18.)

### 5. <u>Settlement Administration</u>

Plaintiff obtained bids from potential third-party settlement administrators Phoenix, Simpluris, Inc. and ILYM Group Inc. (Setareh Decl., ¶ 45.) ILYM was selected because they submitted the lowest bid of $3,500, which Class Counsel believes is reasonable in light of Class Counsel's experience in such settlement administration matters and given the work to be done by or potentially required of the

12

Settlement Administrator due to the various Settlement provisions. (*Id.*) Over the last two years, Plaintiff's counsel has engaged with ILYM on 11 cases. (Setareh Decl., ¶ 18.) ILYM has procedures in place for securely handling class member data. (*Id*. ¶ 46.) The cost of the settlement administrator will come out of the GSA, subject to Court approval.

### 6.   Reversion to Defendant

The settlement is non-reversionary. (Agreement, § 9(a).) Any residue from uncashed checks will go to *cy pres*.

### 7.   Notice

The Notice of Settlement is attached as Exhibit 2 to the Agreement. Consistent with section 3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (¶ 10); a website address for settlement class members to obtain further information and instructions on how to obtain further information on PACER (*Id.* at 10); the date and time of the final approval hearing (*Id.* at 9); and instructs class members to check the website or PACER to ensure the date and time of the final approval hearing have not changed. (*Id.*)

The Notice also uses the proposed language suggested in the Procedural Guidance regarding receiving more information. (*Id.* at 10.)

### 8.   Opt Outs

The Notice advises class members that they can opt out by mailing a request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name, address, telephone number, and a signature. *Id.* 6.

### 9.   Objections

The Notice advises class members of the deadline to submit objections. *Id.* at 7. It also instructs class members to include their name, address, telephone number, signature and a statement of the grounds of the objection. *Id. 7.*

### 10.   Cy Pres

Class Members must cash their Settlement checks within 180 calendar days after they are mailed. (*Id.*, § 29.) If a Class Member fails to cash the check for his or her Settlement Share within 180 days,

1    ILYM will cancel the check(s) and distribute those funds to Alliance for Children's Rights as a *cy pres*

2    recipient. (*Id.*) Class Counsel does not have a relationship with the proposed cy pres. (Setareh Decl. ¶

3    58.) Alliance for Children's Rights is an appropriate *cy pres* beneficiary. The Alliance educates,

4    advises, and provides legal advocacy for vulnerable young consumers on topics related to consumer

5    rights. The Alliance also assists youth transitioning out of foster care with workforce readiness and

6    employment. https://allianceforchildrensrights.org/cy-pres-awards/.

7              **11.    Class Action Fairness Act (CAFA) and Similar Requirements**

8              Defendant removed this matter under federal question jurisdiction, not diversity and therefore

9    CAFA notice is not required. (ECF No. 1). On the date of filing this motion, Class Counsel uploaded

10   a copy of this motion and exhibits including the Settlement Agreements to the LWDA website.

11   (Setareh Decl. ¶ 59.)

12             **12.    Class Counsel's Lodestar**

13             The Class Counsel Award requested by Plaintiff is reasonable and fair because the lodestar for the

14   work performed is $292,997.50, which is far more than the $100,000 sought in attorney fees. (*Id.*, ¶ 37.)

15             **a.    A Reasonable Result Was Achieved on Behalf of the Class**

16             The benefit achieved on behalf of Class Members defines a primary yardstick against which any

17   fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft*

18   *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts recognize that arm's-length negotiations conducted

19   by competent counsel are prima facie evidence of fair settlements.  As the United States Supreme

20   Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if

21   one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through

22   arm's-length bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

23             The Parties reached a Settlement in good faith after negotiating at arm's length with a professional

24   mediator skilled in resolving class action cases including wage and hour actions.  (Setareh Decl., ¶¶ 13-

25   14, 24.)  The Parties thoroughly investigated and evaluated the factual and legal strengths and

26   weaknesses of this case before reaching the Settlement.  (*Id.*)  The Settlement was reached after

27   extensive investigation and research, thorough calculations and risk evaluation, multiple discovery

28   requests, correspondence between Class Counsel and Defendant's counsel, informal exchanges of

1    data and documents—including documentation regarding Defendant's policies regarding timekeeping,

2    overtime, meal periods and rest breaks, and wage statements, as well as time and payroll records for a

3    sample of putative class, collective, and PAGA members. Furthermore, counsel for the parties conferred

4    extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues

5    relevant to reaching a settlement. (Agreement, § 4.)  With the information produced by Defendant, and

6    the aid of Plaintiff's expert in analyzing the data, Plaintiff's counsel was able to adequately evaluate the

7    Settlement. (*Id.;* Setareh Decl., ¶ 21.)  And, notably, approval of a class action settlement does not require

8    that discovery be exhaustive.  *See*, *e.g*., *In re Immune Response Securities Litigation*, 497 F. Supp. 2d

9    1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view

10   of the strength and weaknesses of their cases).  The fact that settlement results from arm's length

11   negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v.*

12   *Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

13          Furthermore, the Parties only attended mediation after significant after significant law and motion

14   practice, including motions to compel arbitration, a motion for summary judgment, appeals and a motion

15   to substitute.

16          With respect to the claims asserted on behalf of the settlement Classes in this case, there are

17   significant risks that support the reduced compromise amount (see estimated potential recovery in Section

18   II.C., *supra*.).  (Setareh Decl., ¶ 22.)  These risks include, but are not limited to the following:

19          (i)     The risk that Plaintiff would not be able to prove liability for alleged failure to provide

20   compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant

21   meal periods and rest breaks would require an individualized inquiry that would prevent these issues from

22   being resolved on a class and/or collective basis.  For example, Plaintiff alleged that Defendant did not

23   maintain accurate records of the start and end times for meal periods taken by employees, instead, Plaintiff

24   alleged employees regularly worked through their meal periods (and rest breaks) in order to complete their

25   job duties within the timeframe allotted by Defendant. Defendant countered with proof that most

26   employees took their meal periods and rest breaks, and that any inquiry into why some employees might

27   have missed meal and rest breaks would necessarily require an individualized inquiry that would prevent

28   this issue from being resolved on a class and/or collective basis.  Defendant states that it had compliant

meal and rest policies. Defendant also argued that employees had freedom to take breaks at their convenience as they were largely unsupervised.

(ii)      The risk that Plaintiff would be unable to establish liability for alleged unpaid straight time and overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), *citing Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) (dismissing certified off-the-clock claims based on proof at trial).  Defendant stated that it had policies prohibiting off-the-clock work and employees also certified the accuracy of their weekly timecards, which employees themselves completed. Defendant stated that mortgage loan officers or individuals in similar positions mainly worked unsupervised at new-build projects outside of the branch office, controlled their own schedules and logged their own time. Thus, Defendant alleges that it would have no way of knowing off-the-clock work was being done, especially when it relied on employees to keep accurate time. Defendant also asserted that it paid employees for the entire time that they were on call as Loan Officer on Duty. (Setareh Decl. ¶ 22.)

(iii)      The risk that Defendant's challenged employment policies and practices might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n. 28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition).  Defendant contended, for example, that it did not have a purported policy of not paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failures to report by employees cannot be legally charged to Defendant and in any event involve such highly individualized circumstances as to prevent class and collective certification should this case be litigated.  *See, e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not required to pay employees for time spent performing work of which the employer had no knowledge).  (Setareh Decl. ¶ 22.)

(iv)      For the same reasons, liability, damages recovery, and certification risks are heightened given: (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class or collective treatment could

16

1    be deemed improper as to one or more claims except for settlement purposes.  (Setareh Decl. ¶ 22.)

2           (v)      The risk that lengthy appellate litigation could ensue as to both liability and certification

3    issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as

4    opposed to unpredictable litigation.  (Setareh Decl., ¶ 22.)

5           In these respects, Defendant strongly denies any liability and the propriety of class certification for

6    any reason other than settlement.  *(Id.,* ¶¶ 16, 22.)  Continued litigation of this lawsuit presented Plaintiff

7    and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.  *(Id.)*

8           In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

9    reasonable recovery for the settlement Class Members.  *(Id.)*  The Settlement amount is, of course, a

10   compromise figure.  *(Id.)*  By necessity, it took into account risks related to liability, damages, class action

11   certification, and all the defenses asserted by the Defendants as to all such matters.  *(Id.)*  Moreover, each

12   Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they

13   have claims that are greater than the benefits they can receive under this Settlement to pursue their own

14   claims.  *(Id.)*

15          There are an estimated 48 Class Members. (Agreement, § 9b).  The average estimated Settlement

16   Share for each Class Member is **$2,427.08 ($116,500 / 48)**. This amount reflects a fair compromise well

17   within the range of reasonableness.  (Setareh Decl. ¶ 24.)  Given the strong case that Defendant could bring

18   to bear to challenge certification and liability, this is not an inconsequential sum.  *(Id.)*  And, confirming

19   the fundamental fairness of the Settlement, each Class Member will be compensated based on the number

20   of Workweeks they worked during the applicable Class Period.  (Agreement, § 10.)

21                          **b.      <u>The Experience, Reputation, and Ability of Class Counsel</u>**

22          California law also recognizes the "skill and experience of attorneys" as appropriate criteria for

23   evaluating a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord*

24   *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ("skill and efficiency of the attorneys"

25   among fee motion criteria); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 U.S Dist.

26   LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Class Counsel's effort,

27   experience and skill").  Class Counsel has had substantial experience with the causes of action here and

28   has regularly litigated employment law class and collective actions.  (Setareh Decl., ¶¶ 27-36.)

**c.**     **The Effort Required by the Litigation Justifies the Fee**

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*, 20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to reach the Settlement. (Setareh Decl. ¶¶ 5-14, 22-24, 37.)

Class counsel expended considerable time and resources in litigating this matter. (*Id.*) The work done by the attorneys working on this case and the PAGA case includes communicating with Plaintiff, drafting pleadings, opposing motions to compel arbitration, opposing a motion for summary judgment, appellate court briefing, propounding multiple sets of interrogatories and comprehensive requests for production to Defendant, reviewing documents informally produced by Defendant, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, attending a mediation session with a mediator experienced in resolving wage and hour class actions, and drafting a motion for preliminary approval.  (*Id.*, ¶ 37.)  The "time and labor" criterion weighs in favor of an award of the requested fees.

**d.**     **The Complexity of the Legal and Factual Issues**

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001).  Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor neutral.

**e.**     **Class Counsel Assumed Substantial Risk**

The novelty and challenges presented by a class and collective action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent – as is the case here – as a factor weighing in favor of approving a negotiated fee award that approximates market rates. *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001).  Because of the uncertainty of the outcome in this and other wage and hour litigation undertaken by Plaintiff's counsel, they took this case with the expectation that a

18

risk enhancement, either in the form of a lodestar multiplier or a percentage of the fund award equivalent thereto, would be available if Plaintiff prevailed. This expectation stems from the fact that many cases undertaken by Plaintiff's counsel as putative class actions do not resolve successfully.

### 13.    <u>Plaintiff's Incentive Award</u>

Plaintiff seeks an Enhancement Payment of $10,000.00[1]. (Agreement ¶ 13.)   Plaintiff Mr. Ahlstrom spent a considerable amount of time on this case. Setareh Decl., ¶ 42. He initiated the case, provided information and documents to counsel, and spoke repeatedly with his counsel about the case. *Id*. The Class has significantly benefited from Plaintiff's actions. (*Id*.)

In addition, Plaintiff took the personal risks of disclosure to future employers that he sued a former employer, making his future career prospects uncertain. Setareh Decl., ¶ 43.  There is now a public record of this lawsuit and the fact that Plaintiff brought this lawsuit.  (*Id*.) Furthermore, in pursuing relief on behalf of the Settlement Class, Plaintiff risked being ordered to pay Defendant's costs and/or attorneys' fees if this action had been unsuccessful. Such costs could have exceeded any individual recovery for Plaintiff in this case, including the amount of the enhancement award. (*Id*.) This, in addition to Plaintiff's significant contributions to this case, justifies the $10,000 enhancement sought on his behalf.

### B.    THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

The Settlement was reached after informed, arm's-length negotiations between the parties with the help of Hon. Brian Walsh (Ret.) a mediator with significant experience mediating employment wage and hour class and collective actions.  (Setareh Decl., ¶¶ 13-14, 24.)  As discussed in greater detail above, the Parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. (*Id.*)  Plaintiff's counsel also retained an expert who reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations.  (*Id.* ¶¶ 23, 37.) The Parties were able to come to an agreement following meditation.  (*Id.*, ¶ 14.)  Accordingly, the Settlement is the product of non-collusive negotiations.

### C.    THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

---

[1] Plaintiff Mr. Ahlstrom has passed away, and any incentive award will issue to his next of kin, Kianna Ahlstrom.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

The Settlement is substantial and non-reversionary and provides for a payment of **$300,000** by Defendant, which is a significant amount given the value of the claims made by Plaintiff and the fairly small class size. (Setareh Decl., ¶¶ 23, 25.)  The Settlement Payment for each Class Member asserting wage and hour claims will be based on the individual Workweek count for each Class Member, which is a fair way to calculate what each Class Member should receive. (Agreement, § 10.)  The average estimated Settlement Share for each Class Member is **$2,427.08 ($116,500 / 48)**.

Defendant does not oppose the Class Representative Service Award (**$10,000**) or the Class Counsel Award (**$100,000** in fees plus up to **$55,000** in costs), and regardless, they are subject to Court approval at the Final Approval hearing.  (Agreement,§ 15).)

### D.    THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendant and applicable law, Plaintiff's counsel determined that the value of their claims to be approximately $2,101.160.68.  (Setareh Decl., ¶ 23.)  Therefore, the settlement amount is approximately 14% of the Class-wide damages estimated by Plaintiff.  This is an excellent result, well above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes") (citation and internal quotation marks omitted). The Settlement should be approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

1.    **Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief**

Plaintiff's counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Defendant.  (Setareh Decl., ¶¶ 5-14, 21-25, 37.)  Plaintiff's counsel propounded discovery, reviewed Defendants' documentation regarding its policies regarding timekeeping, overtime, meal periods and rest breaks, and wage statements, as well as time and payroll records for a sample of putative class, collective, and PAGA members to create a reliable damage model detailing the number of possible violations at issue.  (Agreement, § 4 ;Setareh Decl. ¶¶ 23, 37.) Furthermore, counsel for the parties conferred extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to reaching a settlement. (Agreement, § 4.)

For its part, Defendant vigorously contests liability in the action, is represented by zealous and experienced counsel, and are prepared to vigorously defend against these claims if the Action is not settled.

In light of these risks for all Parties, the Settlement provides the Class Members with a sizeable recovery while mitigating all Parties' risk if the matter were to proceed, and ending very protected, costly litigation. As such, the Settlement is fair, reasonable, adequate, and is in the best interest of the Classes in light of all known facts and circumstances, including the risk of the significant delay. (Setareh Decl. ¶ 19.) The Settlement is also in the best interest of judicial efficiency in this case, as it eliminates a lengthy and contested pre-certification class action lawsuit from this Court's calendar, as well as a pending appeal.

2.    **The Class Release Is Appropriate Given Plaintiff's Claims**

As described above, as part of the Settlement, Class Members will release all claims arising from the facts pled in the complaints.  (Agreement, §33.)  These released claims appropriately track the breadth of Plaintiff's allegations in the Action.

And, of course, Class Members have the right to opt out of the Settlement by submitting a Request for Exclusion as described in the Class Notice.  (*Id.*, §30.)  If they do so, they will not release any claims but, of course, also will not share in the recovery in that event.  FLSA Class Members will have to submit a Consent to Join Settlement Form in order to be able to participate in the Settlement and will only release claims under the Settlement if they do so.  (*Id.*)

E.    **The PAGA Allocation Is Proper**

1   PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and $200

2   per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2).

3   The Agreement provides for payment to the LWDA of $15,000 which is 75% of the PAGA

4   allocation under the settlement. (Agreement ¶ 9(c)). Admittedly, the PAGA allocation is a small

5   percentage of the possible $2,012,648 PAGA exposure (1% of what might be awarded). (Setareh Decl.

6   ¶ 23.) However, Plaintiff submits that is permissible in this case because the settlement of the

7   underlying wage and hour claims is robust, and that serves the deterrent purpose of the PAGA statute.

8   *O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016): "By providing fair

9   compensation to the class members as employees and substantial monetary relief, a settlement not

10   only vindicates the rights of class members as employees but may have a deterrent effect upon the

11   defendant employe and other employers, an objective of PAGA."

12   Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*, 2016

13   WL5907869 (N.D. Cal. 2016) (0.15%); *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June

14   11, 2016) (approving settlement of PAGA claim for $12,000, or 1.3% of the estimated total PAGA value

15   of $921,000, according to the plaintiff's expert).

16   This is because trial courts have broad discretion to reduce the amount of PAGA penalties if the

17   award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2). The

18   PAGA allocation should be approved.

19   **F.    CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE**

20   Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional

21   determination of whether an action should be maintained as a class action, subject to final approval at a

22   later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P.

23   23(c)(1)). Conditional approval of the class is appropriate where the plaintiff demonstrates (1) numerosity,

24   (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of

25   Rule 23(b) also is met. Conditional certification of the settlement class is appropriate here as all the factors

26   Rule 23 requirements are met.

27

28

### 1. The Numerosity Requirement Is Met

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). Numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the estimated count of approximately 48 Class Members satisfies the numerosity requirement. (Agreement, §9b.)

### 2. Commonality and Typicality Requirements

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, Plaintiff's claims involve common questions of both fact and law regarding Defendant's alleged failure to abide by state and federal wage-and-hour law. (Setareh Decl., ¶¶ 48-49.)

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's respective claims are essentially identical to all other non-exempt employees as described in the class provided in the Settlement and Plaintiff's claims are typical of such workers with the same common issues. (Setareh Decl., ¶ 47.)

### 3. Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff has the same interests as the Settlement Classes, there is no conflict between Plaintiff's claims and those of the other Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial

23

experience in litigating wage-and-hour class actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh Decl., ¶¶ 27-36, 50.)

### 4. Class Certification For Settlement Purposes Is Proper Under Rule 23(b)(3)

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification for settlement purposes is proper under one of the three requirements of Rule 23(b). Here, "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  (Setareh Decl., ¶¶ 48-49, 51.)

### G.    THE NOTICE IS FAIR AND ADEQUATE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004.).

Here, the Class Notice (Exhibit 2 to the Settlement) and the manner of notice are "the best notice practicable" as required under Rule 23(c)(2)(B).  All Class Members can be identified, and the Class Notice will be mailed directly to each Class Member using First-Class U.S. Mail. (Agreement, § 28). The Class Notice adequately informs Class Members of the nature of the litigation, the essential terms of the Settlement, his or her estimated Settlement Payment and other payments (if any), and how to object to, elect not to participate in the Settlement (for Class Members), or correct the information on which his or her Settlement Payment or other payment (as applicable) is calculated.  (*Id.*) Further, the Class Notice identifies Class Counsel, specifies the amounts of the Class Representative Service Award, the Class Counsel Award that Plaintiff will seek, and explains how to obtain additional information regarding the Action and the Settlement. (*Id.*)

The FLSA opt-in form (Exhibit 1 to the Agreement) will advise that that they may opt into the Settlement by following the opt-in procedures contained therein and will include a Consent to Join Settlement Form that they

In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

1

## V. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully request that the Court grant the motion for preliminary approval in its entirety.

DATED:  March 18, 2024                    SETAREH LAW GROUP

*/s/ Farrah Grant*
SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiff
Robert Ahlstrom

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES