1  Shaun Setareh (Cal. State Bar No. 204514)
   shaun@setarehlaw.com
2  Thomas Segal (Cal. State Bar No. 222791)
   thomas@setarehlaw.com
3  Farrah Grant (Cal. State Bar No. 293898)
   farrah@setarehlaw.com
4  SETAREH LAW GROUP
   420 N. Camden Drive, Suite 100
5  Beverly Hills, California 90210
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff
   ROBERT W. AHLSTROM

8

9  UNITED STATES DISTRICT COURT

10  NORTHERN DISTRICT OF CALIFORNIA

11

12  ROBERT W. AHLSTROM, on behalf of himself, all others similarly situated,

   Case No. 5:19-cv-03435-BLF

13

   Plaintiff,

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

14

   v.

15

16  DHI MORTGAGE COMPANY LTD. L.P., a Texas limited partnership; and DOES 1 through 50, inclusive,,

17

   Defendants.

[Filed Concurrently with the Declarations of Shaun Setareh, Nathalie Hernandez, and Kianna Ahlstrom and [Proposed] Order]

18

19

20  Date:        January 16, 2025
   Time:        9:00 a.m.
   Place:      Courtroom 3

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE CLERK OF COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on January 16, 2025 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the First Street Courthouse of the U.S. District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, THE ESTATE OF ROBERT AHLSTROM THROUGH KIANNA AHLSTROM ("Plaintiff") and Defendant DHI MORTGAGE COMPANY LTD. L.P. ("DHI" or "Defendant") will and does hereby move, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), for final approval of the class action settlement, for which this Court granted preliminary approval on July 30, 2024 (Dkt. No. 90), and request that the Court:

1. Finally approve the proposed class action settlement (the "Settlement") (ECF No. 81.1, Exh. A) and the Amendment to the Class Action Settlement Agreement (ECF No. 88, Exh. A) between Plaintiff and Defendant;

2. Confirming the appointment of Setareh Law Group and Plaintiff the Estate of Robert W. Ahlstrom through Kianna Ahlstrom as Class Representative;

3. Finally approving Class Counsel's application for Class Counsel Fees for 1/3 of the gross settlement amount, which is **$100,000,** as authorized under the Settlement;

4. Finally approving Class Counsel's application for litigation costs which were expended in the amount of **$17,858.29,** as authorized under the Settlement;

5. Finally approving settlement administration costs to ILYM Group, Inc. in the amount of **$3,500**;

6. Finally approving Enhancement Award of **$10,000** to Plaintiff the Estate of Robert W. Ahlstrom through Kianna Ahlstrom, as authorized under the Settlement;

7. Finally approving a PAGA payment of **$15,000** to the LWDA; and

8. Enter final judgment to give finality to the Settlement.

This Motion is made on the following grounds: (1) the Settlement meets all the requirements for class certification for settlement purposes under Rule 23(e); (2) Plaintiff and counsel are adequate to represent the Settlement Class; (3) the terms of the Settlement are fair, adequate and reasonable; and (4) the notice process performed by the Settlement Administrator comports with all applicable due process requirements. In view of the foregoing, the Proposed Final Approval Order/Judgment submitted with this Motion should be entered.

The motion is based on this notice and motion; the following memorandum in support of the motion; the accompanying declarations of Shaun Setareh, Kianna Ahlstrom and Nathalie Hernandez in support of this motion; the proposed form of Order Granting Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Reimbursement of Litigation Costs, and Enhancement Awards; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

DATED:  December 12, 2024                    SETAREH LAW GROUP

                                            /s/ Farrah Grant
                                            SHAUN SETAREH
                                            THOMAS SEGAL
                                            FARRAH GRANT
                                            Attorneys for Plaintiff
                                            Robert Ahlstrom

# TABLE OF CONTENTS

I.      INTRODUCTION..........................................................................................................1

II.     OVERVIEW OF THE LITIGATION ........................................................................1

    A.      Factual and Procedural Background ................................................................1

III.    THE SETTLEMENT......................................................................................................3

    A.      Net Settlement Amount Allocation..................................................................4

    B.      Calculation of Individual Settlement Payments...............................................5

    C.      Release of Claims ............................................................................................5

    D.      Notice Process..................................................................................................6

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL...................7

    A.      The Best Practical Notice of Settlement Has Been Provided to the Class........7

    B.      Final Approval Standards under Rule 23..........................................................8

    C.      The Settlement Is Presumptively Fair Because of the Positive Response to the
        Settlement by Class Members, the Significant Investigation Conducted, Class
        Counsel's Experience, and Arm's-Length Negotiations. ..................................8

        1.      Class Members' Response to the Settlement Is Positive. .....................9

        2.      The Settlement Was Reached Only After the Parties Engaged in
            Substantial      ..........................................................................................9

        Investigation and Analysis of the Legal Issues.................................................9

        3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight..............10

        4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's...........10

        Length Negotiations. ......................................................................................10

        5.      The Settlement Provides Substantial, Certain Benefits and Avoids the
            Risk, Cost, Delay, and Burden of Further Litigation..........................10

            a.      The Value of the Settlement Favors Final Approval. .............10

            b.      Further Litigation Would Involve Risk, Expense, Delay, and
                Burden on Class Member …………………………………………11

V.      THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES,....................14

REIMBURSEMENT OF COSTS, AND ENHANCEMENT AWARD ........................14

    A.      The Legal Standard for Attorneys' Fee Awards ..............................................14

    B.      The Fee Award Is Reasonable and Should Receive Final Approval ................14

        1.      An Excellent Result Was Achieved on Behalf of the Class ................14

        2.      The Experience, Reputation, and Ability of Class Counsel.................15

        3.      The Effort Required by the Litigation Justifies the Fee......................16

4.    The Complexity of the Legal and Factual Issues ................................. 16

5.    The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel ................................................................................. 17

6.    The Fee is Reasonable Under the Common Fund Doctrine .............................. 17

   a.    The standard fee award in class actions has, over time, resolved itself as one ...................................................................... 17
        third of the recovery in common fund cases. ....................................... 17

7.    A Lodestar Analysis Supports the Requested Fee .............................. 18

8.    An Award of Litigation Costs Should Be Made From the Common Fund ......... 19

C.    The Enhancement Award Is Reasonable ............................................................20

D.    The Settlement Administrator's Expenses Should Be Approved ....................20

VI.    **CONCLUSION** ........................................................................................**20**

# Table of Authorities

**CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000)....................... 15

*Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ................................................ 17

*American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977)................................ 15

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ............................................ 19

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)..................................................................... 17

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979) ......................................................... 8, 10

*Carlin*, 380 F.Supp.3d at 1021 ................................................................................................... 17

*Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ................................................ 9

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ........................................................ 18, 19

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010)....................................... 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................................................... 11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ..................................... 1, 8

*Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) ................................................................................................................... 12

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014)...................................................... 12, 13

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981)................................................................................................................... 8, 10

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995) ................................................ 15

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ......................................................... 11

*Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ................................................ 19

*Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013)).......................................................................................................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)............................................. 8, 10, 11, 17

*Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005)............................... 15

*Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001)................................................................................................... 10

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ...................................................... 20

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)..................................................... 11

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987)................................................................................................................................ 9

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976)...................................... 9

*Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000)................................................................... 19

*Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) ....................................................................................................... 11

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) ............................................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ................................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ........................... 9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ........................ 8, 11

*Omnivision*, 559 F. Supp. 2d at 1047 ............................................................................ 17, 19

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ................................................................ 9

*Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ..................................................... 10

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ........................... 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) .................................................. 7

*Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................... 15

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) ...................................... 15

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ........................................ 10

*Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ...................................................... 14, 16, 17

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ............. 17, 18

*Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) .......................... 20

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ...................................................... 1, 8

*Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011)........................................................................................................................... 11

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) ....................................... 10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) .................................... 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ....................... 18, 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ................................ 14-19

*Washington Public Power Supply Sys. Sec. Litig*, 19 F.3d at 1299-1300 ................................. 17

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001) ........................................ 16, 19

**STATUTES**

Lab. Code §§ 1194 ............................................................................................................. 2, 6

Lab. Code §§ 1194.2 ............................................................................................................... 2

Lab. Code §§ 1197 ............................................................................................................. 2, 6

Lab. Code §§ 1198 ............................................................................................................. 2, 6

Lab. Code §§ 1997.1 ............................................................................................................... 2

Lab. Code §§ 223 ............................................................................................................... 2, 6

Lab. Code §§ 226.7 ................................................................................................................. 2

29 U.S.C. § 201, *et seq.* .......................................................................................................... 2

29 U.S.C. § 216(b) .................................................................................................................. 4

Lab. Code §§ 512 ............................................................................................................... 2, 6

Bus. & Prof. Code §§ 17200 *et seq.* ..................................................................................... 2, 6

Lab. Code §§ 201 ............................................................................................................... 2,6

Lab. Code §§ 202 ............................................................................................................... 2, 6

Lab. Code §§ 203 ............................................................................................................... 2, 6

Lab. Code §§ 204 ............................................................................................................... 2, 6

Lab. Code §§ 510,............................................................................................................. 2, 6

Lab. Code §§ 226(a) .......................................................................................................... 2

Labor Code § 226(e) ......................................................................................................... 13

Labor Code § 210 .............................................................................................................. 6

Labor Code § 212 .............................................................................................................. 6

Labor Code § 225.5 ........................................................................................................... 6

Labor Code § 226(a) ......................................................................................................... 6

Labor Code § 226.3 ........................................................................................................... 6

Labor Code § 256 .............................................................................................................. 6

Labor Code § 558 .............................................................................................................. 6

Labor Code § 1197.1 ......................................................................................................... 6

Labor Code § 1199 ............................................................................................................ 6

Labor Code § 2699(f) ........................................................................................................ 6

**OTHER AUTHORITIES**

7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 ........................ 17

Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03 ......................................... 18

Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 at 524-27 (2008) ........................ 14

*Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42 ...................... 10

**RULES**

Fed. R. Civ. P. 23(e)(2) ...................................................................................................... 1

Fed. R. Civ. P. 23(h) .......................................................................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Parties' settlement of this wage-and-hour class action (the "Settlement") meets the criteria for final approval.  After years of litigation, the Settlement fairly resolves Plaintiff's claims that Defendant violated California wage-and-hour laws. The Settlement is the product of arm's-length negotiations by experienced counsel after discovery, mediation, and recognition of the strengths and weaknesses of each side's positions. The Settlement has received the overwhelming support of the Class, with not a single objection or request for exclusion to the Settlement.

The settlement should be approved as fair, reasonable and adequate. The result achieved is excellent with an average estimated Class Member Payment of $1,327.38. The Class responded overwhelmingly favorably to the Settlement.  The Settlement Administrator has received **no** opt-out requests and **no** objections from the 57 Class Members who were sent notice of the Settlement.  Class Counsel (who are highly experienced handling complex wage-and-hour class actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement.  The Settlement is consistent with the strengths and weaknesses of Plaintiff's claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

Additionally, the full amount of attorneys' fee requested should be awarded. Plaintiff's counsel spent significant time on this case, incurring a lodestar of $316,462.50**,** which is far more than the $100,000 sought in attorney fees. Plaintiff's counsel took on this high risk case with no guarantee of success. Plaintiff's counsel knew there were a relatively small number of putative class members, but diligently fought Defendant, which resulted in a highly favorable settlement for settlement members. Plaintiff's counsel pushed on when obstacles arose.  For example, when Defendant's motion to compel arbitration was granted, Plaintiff's counsel zealously fought for the rights of Plaintiff and putative class members by appealing the decision and ultimately was successful at the Ninth Circuit Court of Appeals, making new law favorable to the Plaintiff bar. Plaintiff's counsel obtained a published appeal opinion in which the Ninth Circuit Court of Appeals reversed the district court's ruling compelling the claims to arbitration, holding that parties cannot delegate issues of formation of an arbitration agreement to the arbitrator for determination. Therefore, the

Court should grant final approval and award the requested attorneys' fees.

## II.    OVERVIEW OF THE LITIGATION

### A.    Factual and Procedural Background

Defendant DHI MORTGAGE COMPANY LTD. L.P. is a mortgage lending company who employed mortgage loan officers. Defendant hired Plaintiff Robert Ahlstrom on or around July 2015 as a loan officer. (Declaration of Shaun Setareh ("Setareh Decl.", ¶ 3.)

Plaintiff's class action was originally filed against DHI Mortgage Company GP, Inc. and D.R. Horton, Inc. on August 2, 2017 in the U.S. District Court, Northern District of California, Case no. 3:17-cv-04383-BLF. On November 30, 2018, the Court granted Defendants' Motion to Compel Arbitration and dismiss the action without prejudice, as the Court found that there was a binding arbitration agreement. Defendants asserted that D.R. Horton, Inc. is the parent company of DHI Mortgage Company, GP, Inc. and DHI Mortgage Company, Ltd. Defendants further asserted that Plaintiff' Robert Ahlstrom was employed by DHI Mortgage Company, Ltd., L.P. (*Id.* ¶ 4.)

On October 6, 2017, Plaintiff filed a Representative Action Complaint ("Plaintiff's PAGA Action") in the Santa Clara County Superior Court, Case no. 17stcv317032, against Defendant for civil penalties pursuant to the Private Attorney General Act based on the same alleged Labor Code violations as the Class Action. (*Id.* ¶ 5.)

In order to file suit against the correct employer of Plaintiff Robert Ahlstrom, On March 27, 2019, Plaintiff filed suit in Alameda Superior Court, asserting the following claims against Defendant: 1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); 2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); 3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); 4) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); 5) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); 6) Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*); 7) Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201, *et seq.*); 8) Breach of Written Contract; and 9) Breach of the Implied Covenant of Good Faith and Fair Dealing. (*Id.* ¶ 6.)

On June 17, 2019, Defendant removed the Action to the U.S. District Court for the Northern District of California (the "Northern District"). (ECF 1.)

On September 5, 2019, the Court in the matter of the original class action complaint, Case no. 3:17-cv-04383-BLF, issued a sua sponte judicial referral for purposes of determining the relationship of Case no.

3:17-cv-04383-BLF and Case no. 19-cv-03435-BLF and On September 10, 2019, the cases were deemed related. (Setareh Decl. ¶ 8.)

On July 22, 2019, Defendant filed its motion to compel arbitration. (ECF No. 16). The matter was fully briefed and the Court granted the motion to compel arbitration and to dismiss on or around January 16, 2020. (ECF No. 26). Plaintiff appealed the order granting the motion to compel to the 9th Circuit.  (ECF No. 27). On December 29, 2021, the Court of Appeals reversed the district court's order dismissing the complaint and granting the motion to compel arbitration. The Court of Appeal found that the arbitration agreement did not constitute a properly formed agreement between Plaintiff and DHI Mortgage Company, Ltd., L.P., because Plaintiff had no employment relationship with D.R. Horton, the purported signatory.  (ECF No. 29).

Around October 30, 2021, the Court in the PAGA action granted Defendant's summary judgment motion. Plaintiff appealed, filing an opening appellant's brief on or around June 24, 2022. The parties agreed to stay the appellate briefing pending mediation. (Setareh Decl. ¶ 10.)

On October 13, 2022, Plaintiff's counsel filed the Suggestion of Death to inform the Court in the Class Action case of Mr. Ahlstrom's passing. (ECF No. 47). Plaintiff's motion to substitute the estate of Robert W. Ahlstrom was fully briefed. On January 18, 2023, the Court granted Plaintiff's motion to substitute the Estate of Robert W. Ahlstrom through his daughter, Kianna Ahlstrom as Plaintiff and class representative in place of Robert W. Ahlstrom. (ECF No. 57).

On February 16, 2023, the Parties participated in a full-day private, arm's-length mediation with Hon. Brian Walsh (Ret.), serving as neutral.  (Agreement, § 3.) Prior to the February 16, 2023 mediation, the Parties engaged in formal discovery and also engaged in an informal exchange of information. Defendant provided Plaintiff with documentation regarding its policies regarding timekeeping, overtime, meal periods and rest breaks, and wage statements, as well as time and payroll records for a sample of putative class, collective, and PAGA members. Furthermore, counsel for the parties conferred extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to reaching a settlement. (*Id*., § 4.)

At the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiff's claims, and the legal bases for the claims and defenses.  The Parties were able to reach a settlement following the February 16, 2023 mediation. (Setareh Decl., ¶ 13.)

The Motion for Preliminary Approval was filed on March 18, 2024. (ECF 81.) Plaintiff's supplemental

briefing was filed on July 29, 2024, and included an amendment to the Settlement Agreement. (ECF 88.) On July 30, 2024, the Court granted preliminary approval of the Settlement.  (ECF 90.)

## III.    THE SETTLEMENT

The Agreement provides for: (1) a Service Payment Award to Plaintiff, (2) reasonable attorneys' fees and actual litigation costs, (3) administrative expenses, (4) a payment to the LWDA, and (5) the remaining funds to be distributed to class members.

The Agreement also provides for a release of claims for those class members who do not exclude themselves from the settlement and a reasonable notice and payment procedure.  Importantly, the Agreement is not a claims-made settlement.  Instead, all class members will be mailed checks directly.  All class members who do not affirmatively opt-out will receive a payment from the Settlement, as will all PAGA Group Members to the extent of their share of the PAGA Payment regardless of whether they opt out. However, as required under 29 U.S.C. section 216(b), Collective Members will have to return an "opt-in" form in order to participate in the settlement.  (Agreement, § 7(f).)

Plaintiff seeks to represent the Settlement Class, defined as "all DHI California non-exempt employees who worked as mortgage loan officer, loan originators, licensed loan originator assistants, and unlicensed loan originator assistants from March 27, 2015 through the date of preliminary approval."  (Agreement, ¶ 7(c).)

The PAGA Group is "all DHI non-exempt employees who worked as mortgage loan officer, loan originators, licensed loan originator assistants, and unlicensed loan originator assistants in California from August 4, 2016 through the date of the trial court judgment date (i.e. November 2021)." (Agreement, ¶ 7(d).)

The Collective members in the Class Action are "all DHI California non-exempt employees who worked as mortgage loan officers, loan originators, licensed loan originator assistants, and unlicensed loan originator assistants from March 27, 2016 through the date of conditional approval." (Agreement, ¶ 7(f).)

//

### A.        <u>Net Settlement Amount Allocation</u>

The GSA is **$300,000**. (Agreement, § 9(a).)  The "Net Settlement Amount" is defined as the Gross Settlement Amount, less all of the following: (1) all costs of settlement administration, estimated to be approximately $3,500; (2) attorneys' fees of up to one third of the Gross Settlement Amount ($100,000); (3) Class Counsel's reasonable out-of-pocket costs (not to exceed $55,000); (5) the Class Representative

1  Service Payment Award, not to exceed the sum of $10,000 to the Estate of Robert Ahlstrom, through Kianna
2  Ahlstrom; (6) $15,000, which is seventy-five percent (75%) of the $20,000 earmarked for the release of
3  Plaintiff's and each PAGA Group Member's PAGA claims, which shall be paid to the California Labor and
4  Workforce Development Agency ("LWDA"). (*Id*., § 9(c).)

5        The highest estimated Class Member Payment is $4,248.89 and the average estimated Class Member
6  Payment is $1,327.38. (Declaration of Nathalie Hernandez ("Hernandez Decl."), ¶ 15.)   The participating
7  collective members will receive an estimated gross payment of $2,787.50, with the estimated highest gross
8  payment being $5,910.06. (*Id*.)

9        The entire GSA will be paid out; none of it will revert to Defendant.  Settlement checks that are uncashed
10 after 180 days will be paid to a *cy pres* non-profit recipient approved by the Court.  (Agreement, ¶ 29.) The parties
11 are conferring regarding the selection of a cy pres. (Setareh Decl. ¶ 49.)

12 **B.    Calculation of Individual Settlement Payments**

13        Each Settlement Share shall be determined as follows:

a. The Claims Administrator shall assign to each Class Member a "Settlement Ratio," which shall be a fractional number comprised of (i) that person's Individual Work Weeks as the numerator, and (ii) the aggregate total of all Class Members' Individual Work Weeks as the denominator. The Claims Administrator shall assign to each Settlement Class Member the "Settlement Share" which shall be calculated by multiplying that Settlement Class Member's Settlement Ratio by the amount allocated to Class Members from seventy five percent (75%) of the Net Settlement Amount.

b. The Claims Administrator shall assign to each Collective Member a "Settlement Ratio," which shall be a fractional number comprised of (i) that person's Individual Work Weeks as the numerator, and (ii) the aggregate total of all Collective Members' Individual Work Weeks as the denominator. The Claims Administrator shall assign to each Collective Member the "Settlement Share" which shall be calculated by multiplying that Collective Member's Settlement Ratio by the amount allocated to Class Members from twenty-five percent (25%) of the Net Settlement Amount.

c. The "PAGA Allocation."  PAGA Group Members will receive a pro rata share of the $5,000 portion of the $20,000 PAGA payment. They will receive this payment and be bound by the PAGA release whether or not they request exclusion from the settlement.

(Agreement, § 10(a-c).)

25 **C.    Release of Claims**

26        Upon the Settlement Date, Participating Class Members release DHI Mortgage Company Ltd L.P.,
27 its present, former, and future parents, subsidiaries, affiliates, predecessors, successors and assigns, and each

28

of their respective past and present members, shareholders, directors, officers, employees, agents, servants, registered representatives, insurers and attorneys (collectively hereafter, the "Released Parties") from any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, that arise out of or reasonably relate to the factual allegations in the operative complaints and the prior complaints in this matter including claims for failure to pay all wages due, including minimum wages and overtime; failure to provide meal and rest periods, failure to furnish accurate itemized wage statements; and failure to pay all wages due to discharged and quitting employees; breach of written contract for alleged failure to pay allegedly earned commissions at termination; and breach of the implied covenant of good faith and fair dealing related to same.  The released claims include, but are not limited to, claims brought under state the California Labor Code, California Business and Professions Code sections 17200-17208, and the Industrial Welfare Commission Wage Order.  Such claims include claims for wages, statutory penalties, civil penalties, damages, liquidated damages, or other relief under the California Labor Code, PAGA, relief from unfair competition under California Business and Professions Code section 17200 *et seq.*; attorneys' fees and costs; and interest. (Agreement, § 33(a).)

Upon the Settlement Date, Participating Collective Members fully release and discharge the Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, that arise out of or reasonably relate to the factual allegations in the operative complaints and the prior complaints in this matter including claims for failure to pay all wages due, including minimum wages and overtime; failure to keep required, and accurate records of all hours worked The released claims include, but are not limited to, claims brought under federal law, the  Fair Labor Standards Act (the "FLSA").  Such claims include claims for wages, statutory penalties, civil penalties, damages, liquidated damages, or other relief under the  FLSA, relief from unfair competition under California Business and Professions Code section 17200 *et seq.*; attorneys' fees and costs; and interest. (Agreement, § 33(b).)

The State of California and all PAGA Group Members fully releases and discharges the Released Parties from claims for civil penalties under PAGA under Labor Code sections 201, 202, 203, 204, 210, 212, 223, 225.5, 226(a), 226.3, 226.7, 256, 510, 512, 558, 1194, 1197, 1197.1, 1198, 1199, 2699(f) that arise out of or reasonably relate to the factual allegations in the operative complaints, the notice letters to the California

Labor Workforce and Development Agency ("LWDA"), and the prior complaints in the PAGA Action. (Agreement, § 33(c).)

**D.      Notice Process**

The Court directed that the proposed Class Notice be sent to Class Members and appointed ILYM Group, Inc. ("ILYM"), to administer the Settlement.  (ECF 90.)  On September 17, 2024, ILYM received the class data file from Counsel for Defendant, which contained the name, social security number, last known mailing address, and employment dates for each Settlement Class Member. (Hernandez Decl., ¶ 5.)  The Class List contained 63 records which included the Settlement Class, Collective Members, and Aggrieved Employees. The Settlement Class contains 57 individuals. (*Id.*)

Prior to mailing Class Notice, ILYM updated the address information for Class Members using data from the National Change of Address (NCOA) database.  (*Id.*, ¶ 6.)  On September 27, 2024, ILYM mailed the Class Notice by first class mail to the 63 individuals.  (*Id.*, ¶ 7, Ex. A.) ILYM performed 2 address traces on the 2 Class Notices returned as undeliverable for the first time.  1 more current address was obtained and the Class Notice was promptly re-mailed to the Class Member via First Class mail.  As of the date of the settlement administrator's declaration, a total of 1 Notice Packet has been deemed undeliverable as no updated address was found, notwithstanding the skip tracing. (*Id.*, ¶ 10.)

ILYM Group has received 10 claim forms. The deadline to submit a claim form was November 12, 2024. (*Id.*, ¶ 13.) ILYM Group will report a total of 10 Participating Claimants, representing 18.52% of the 54 Collective Class Members. (*Id.*, ¶ 14.)

ILYM has received <u>no</u> Opt-Outs. (*Id.*, ¶ 11.) ILYM has received <u>no</u> Objections.  (*Id.*, ¶ 12.)  The Response Deadline was November 12, 2024.  (*Id.*, ¶¶ 11-12.)

**IV.      THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL**
**A.                  The Best Practical Notice of Settlement Has Been Provided to the Class.**

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process).  Indeed, individual Class Notice was served on each Class Member at his or her most recent address,

1  after cross-referencing each address with U.S. Post Office records.  Moreover, the Class Notice informed Class

2  Members of the pendency of the action and their right not to participate in the Settlement.  *See Mullane v. Cent.*

3  *Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably

4  calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

5  an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and

6  adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have

7  been given the opportunity to participate fully in the opt-out, comment, and approval process.

8       The lack of governmental objection to the Settlement further supports final approval.

**B.**          **Final Approval Standards under Rule 23.**

9       "[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in

10  complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action

11  lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the

12  outcome, and the typical length of the litigation.  *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial

13  policy [...] favors settlements, particularly where complex class action litigation is concerned").  On a motion for

14  final approval of a class action settlement under FRCP 23(e), a court's inquiry is whether the settlement is "fair,

15  adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual

16  component parts, that must be examined for overall fairness.'"  *Staton*, 327 F.3d at 952 (quoting *Hanlon v.*

17  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

18       When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private

19  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach

20  a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

21  negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

22  *Officers for Justice*, 688 F.2d at 625.  The court should balance "the strength of plaintiffs' case; the risk, expense,

23  complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial;

24  the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the

25  experience and views of counsel [...] and the reaction of the class members to the proposed settlement."  *Id.*; *see*

26  *also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson*

27  *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "The recommendations of plaintiffs' counsel should be

28

given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

**C.      The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations.**

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

**1.      Class Members' Response to the Settlement Is Positive.**

Out of 57 Class Members, not a single Class Member objected to the Settlement. (Hernandez Decl., ¶ 12.) *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, no Class Members have opted out of the Settlement to date. (Hernandez Decl., ¶ 11.)

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

**2.      The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.**

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement

in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Prior to the February 16, 2023 mediation, the Parties engaged in formal discovery and also engaged in an informal exchange of information. Defendant provided Plaintiff with documentation regarding its policies regarding timekeeping, overtime, meal periods and rest breaks, and wage statements, as well as time and payroll records for a sample of putative class, collective, and PAGA members. Furthermore, counsel for the parties conferred extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to reaching a settlement. (Agreement, § 4.)

**3.       Counsel's Endorsement of the Settlement Is Entitled to Great Weight.**

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable.  Plaintiff's Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one.  (Setareh Decl., ¶¶ 15, 25-27.)  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

**4.       The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently.  *See Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation with Hon. Brian Walsh (Ret.).  (Setareh Decl., ¶ 13.)  Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and

1  substantial evidence.  (*Id*. ¶ 12.)

2  **5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.**

3  **a.    The Value of the Settlement Favors Final Approval.**

4  The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and

5  an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in

6  exchange for the saving of cost and elimination of risk, the parties each give up something they might have won

7  had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the

8  "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."  *Linney v.*

9  *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end,

10  "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be

11  prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.

12  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a

13  speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448

14  (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

15  Here, the value of the Settlement—$300,000—is a fair and reasonable result, especially in light of the

16  defenses raised by Defendant, including that its meal and rest period policies were legally compliant and that it

17  provided breaks in accordance with California law. (Setareh Decl., ¶ 18.)  Moreover, the Settlement Share

18  amounts represent a reasonable, meaningful recovery for Class Members. Accordingly, the $300,000 Gross

19  Settlement Amount is well within the range of reasonableness.

  **b.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

20  When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v.*

21  *Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court

22  approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of

23  liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-

24  CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement

25  where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602,

26  at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and

27  expensive …").

28

Similarly here, Defendant continues to contest liability.  Defendant's denial of liability, paired with its anticipated diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.  (Setareh Decl., ¶¶ 18-22.)

Moreover, this class action involves intricate legal and factual questions.  Litigating these complex claims would require substantial additional discovery and pre-trial motions (including a motion for class certification and motions for decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence.  (*Id*.)  Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues.  (*Id*.)  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials.  (*Id*.)  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  (*Id*.)  In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members.  Such a result benefits the Parties and the court system.

While Plaintiff asserts this is a viable case for trial, Plaintiff realizes that there are always significant risks associated with certification and trials, and those risks cannot be eliminated in this case. The risks associated with this matter include:

(i)        The risk that Plaintiff would not be able to prove liability for alleged failure to provide compliant meal periods and rest breaks; or that to establish liability for the failure to provide compliant meal periods and rest breaks would require an individualized inquiry that would prevent these issues from being resolved on a class and/or collective basis.  For example, Plaintiff alleged that Defendant did not maintain accurate records of the start and end times for meal periods taken by employees, instead, Plaintiff alleged employees regularly worked through their meal periods (and rest breaks) in order to complete their job duties within the timeframe allotted by Defendant. Defendant countered with proof that most employees took their meal periods and rest breaks, and that any inquiry into why some employees might have missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class and/or collective basis. Defendant states that it had compliant meal and rest policies. Defendant also argued that employees had freedom to take breaks at their convenience as they were largely unsupervised.

(ii)        The risk that Plaintiff would be unable to establish liability for alleged unpaid straight time and

overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39, n. 33 (2014), *citing Dilts v. Penske Logistics, LLC*, No. 08-cv-218-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) (dismissing certified off-the-clock claims based on proof at trial). Defendant has contended, for example, that Plaintiff's allegations for unpaid wages are not subject to common proof since they are based on Plaintiff's allegation that employees worked through meal breaks. Defendant stated that it had policies prohibiting off-the-clock work and employees also certified the accuracy of their weekly timecards, which employees themselves completed. Defendant stated that mortgage loan officers or individuals in similar positions mainly worked unsupervised at new-build projects outside of the branch office, controlled their own schedules and logged their own time. Thus, Defendant alleges that it would have no way of knowing off-the-clock work was being done, especially when it relied on employees to keep accurate time. Defendant also asserted that it paid employees for the entire time that they were on call as Loan Officer on Duty. (Setareh Decl. ¶ 18.)

(iii)    The risk that Defendant's challenged employment policies and practices might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & n. 28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition). Defendant contended, for example, that it did not have a purported policy of not paying required compensation, but rather a policy of paying compensation and of requiring employees to report any unpaid compensable time, and that any failures to report by employees cannot be legally charged to Defendant and in any event involve such highly individualized circumstances as to prevent class and collective certification should this case be litigated. *See, e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer not required to pay employees for time spent performing work of which the employer had no knowledge).

(iv)    For the same reasons, liability, damages recovery, and certification risks are heightened given: (1) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; and (3) the risk that class or collective treatment could be deemed improper as to one or more claims except for settlement purposes.

(v)    The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to

1  unpredictable litigation.  (Setareh Decl., ¶ 21.)

2       Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were

3  (and continue to be) very difficult to assess. In light of the uncertainties of protracted litigation, the Settlement

4  amount reflects a fair and reasonable recovery for the settlement Class Members. (Setareh Decl. ¶¶ 21-22).

5  **V.    THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND ENHANCEMENT AWARD**

6  **A.    The Legal Standard for Attorneys' Fee Awards**

7       California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee

8  request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class

9  counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv) whether class

10  counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the

11  litigation.  *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

12  1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr, Manual for Complex Litigation, Fourth,

13  § 21.71 at 524-27 (2008) (survey of federal criteria similar to California criteria).

14  **B.    The Fee Award Is Reasonable and Should Receive Final Approval**

**1.    An Excellent Result Was Achieved on Behalf of the Class**

15       The benefit achieved on behalf of class members defines a primary yardstick against which any fee

16  motion is measured.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048.

17       With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks

18  that support the reduced compromise amount. For the reasons described in section IV C 5(b) *supra* (pages 11-

19  13), there is great risk in this case and this factor supports the requested fee award.

20       When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable.

21  Indeed, the Gross Settlement Amount will provide Settlement Class members with real and timely payments as

22  opposed to the largely speculative awards that may or may not otherwise be obtained based on the various

23  litigation risks going forward should the proposed Settlement not be approved. (Setareh Decl., ¶ 21.)

24       In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable

25  recovery for the settlement Class Members.  The settlement amount is, of course, a compromise figure.  By

26  necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.

27  Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing

28  those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue

1   their own claims.

2          The highest estimated Class Member Payment is $4,248.89 and the average estimated Class Member

3   Payment is $1,327.38. (Hernandez Decl., ¶ 15.)  The participating collective members will receive an estimated

4   gross payment of $2,787.50, with the estimated highest gross payment being $5,910.06. (*Id.*)

5          The value of these amounts reflects a fair compromise well within the range of reasonableness.  Given

6   the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum.  And,

7   confirming the fundamental fairness of the settlement, Class Members who worked for Defendant longer will

8   receive more of the net settlement share. After analyzing the claims in this matter, Plaintiff has concluded that the

9   value of this Settlement is fair, adequate and reasonable.  Based on information provided by Defendant during

10  the litigation, as well as other investigation, Plaintiff's counsel estimates that value of their claims to be

11  approximately $2,101,160.68.  (ECF No. 81.1, ¶ 23.) Thus, the Gross Settlement Amount of $300,000 represents

12  approximately 14% of the Class-wide damages estimated by Plaintiff.  While Plaintiff would certainly have

13  preferred to recover more (and Defendant would have preferred to pay less), this outcome is favorable considering

14  the risks of further litigation.  On that basis, it would be unwise to pass up this settlement opportunity.

15         How class members respond to a class action settlement is typically addressed in concert with courts'

16  assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*.  State and federal

17  courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and

18  specifically the extent to which class members object, and through their objections imply a settlement's

19  unfairness.  *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53

20  (2000) (only nine objectors from a class of 5454 was an "overwhelmingly positive" fact that supported approval

21  of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5400

22  strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King

23  Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import").

24  Here, there are no objections. (Hernandez Decl. ¶ 12.)

25  **2.      The Experience, Reputation, and Ability of Class Counsel**

26         California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating

27  a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way

28  Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In*

*re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and have regularly litigated employment law class actions. (Setareh Decl., ¶¶ 25-29.)

**3.    The Effort Required by the Litigation Justifies the Fee**

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 28, 32, 34-35.)

Class counsel expended considerable time and resources in litigating this matter. The work done by the attorneys working on this case includes communicating with Plaintiff, interviewing Plaintiff in order to determine the claims in the case, drafting pleadings, propounding written discovery, reviewing documents produced by Defendant, opposing motions to compel arbitration, appealing the order granting the motion to compel to the 9th Circuit, fulling briefing Plaintiff's appeal of the order grating the motion to compel and winning, opposing Defendant's summary judgment motion, appealing the ruling on Defendant's summary judgment motion, filing an opening appellant's brief in the Court of Appeal regarding the appeal of Defendant's summary judgment motion, fully briefing a motion to substitute the estate of Robert W. Ahlstrom, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, researching and evaluating a potential motion to remand, preparing for mediation and preparing and reviewing documents for settlement, drafting the motion for preliminary approval and supplemental briefing, and drafting the motion for final approval. (*Id.* ¶¶ 28, 32, 34-35.) The "time and labor" criterion weighs in favor of an award of the requested fees.

**4.    The Complexity of the Legal and Factual Issues**

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Here, complexity of legal issues was a significant factor as evidenced by the extensive history of motion practice. This included motions to compel arbitration, appealing the order granting the motion to compel to the 9th Circuit, fulling briefing Plaintiff's appeal of the order grating the motion to compel, Defendant's summary judgment motion, appealing the ruling on Defendant's summary judgment motion, filing an opening appellant's brief in the Court of Appeal regarding the appeal of Defendant's

summary judgment motion, and fully briefing a motion to substitute the estate of Robert W. Ahlstrom. Accordingly, the complexity of the legal issues weighs in favor of the fees.

**5.     The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel**

Class Counsel undertook this litigation on a pure contingency basis. (Setareh Decl. ¶ 42.) Class Counsel pursued the litigation for over five years in the face of significant setbacks, expending hundreds of hours in professional time and declining other potentially remunerative work. "These burdens are relevant circumstances." *Vizcaino*, 290 F.3d at 1050 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium ... for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis ...." *In re Washington Public Power Supply Sys. Sec. Litig*, 19 F.3d at 1299-1300. What is more, Class Counsel incurred $44,242.80 in out-of-pocket litigation costs. "This substantial outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1047. "A higher-than-benchmark award exists to reward counsel for investing "substantial time, effort, and money, especially in light of the risks of recovering nothing." *Carlin*, 380 F.Supp.3d at 1021 (quoting *In re Washington Public Power Supply Sys. Sec. Litig*, 19 F.3d at 1299-300); *see also Vizcaino*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").

**6.     The Fee is Reasonable Under the Common Fund Doctrine**

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement.  *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method).  *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

**a.     The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases.**

According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually, 50% of the fund is the upper limit on a reasonable fee award from a

common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *See* Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03.  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent commonly awarded in cases where the settlement is relatively small***. *See Id.*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million).

The proposed one third of the GSA fee award is consistent with the average fee award in class actions. Awards of one third or more are common in court-approved class actions litigated and settled by Class Counsel and other firms across the state.  (Setareh Decl., ¶ 33.)  Class counsel has been issued one third of the settlement amount in fees in a number of cases, including recently in *Evans v. Wal-Mart Stores, Inc*., Central District of California Case No. 2:17-cv-07641-AB-KK ECF No. 272; *Burnthorne-Martinez v. Sephora USA, Inc*., 2018 WL 5310833, at *3 (N.D.Cal., 2018), *Garza v. Brinderson Constructors L.P.,* Northern District of California Case No. 5:15-cv-05742-EJD ECF No. 80, and *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal., 2018). (*Id.*)

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.  In fact, while the Ninth Circuit identified 25% as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around ***one-third*** of the recovery.") (emphasis added).  Class Members will have the opportunity to object to the proposed award of fees and costs (or any other aspect of the settlement, if they so choose).

### 7.    A Lodestar Analysis Supports the Requested Fee

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness

1  of a fee award. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). A district court

2  may, however, elect to perform such a check in order to confirm "the reasonableness of the percentage award."

3  *Vizcaino*, 290 F.3d at 1050. Even a pure lodestar-based fee award does not require mathematical precision.

4  *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000)32; *Laffitte*, 1 Cal.5th at 505. "Where a lodestar is merely

5  being used as a cross-check, the court 'may use a rough calculation ....'" *Joh*, 2021 WL 66305 at *7 (quoting

6  *Aguilar*, 2017 WL 2214936 at *5)); *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not

7  required to flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015)

8  ("lodestar cross-check calculation need entail neither mathematical precision nor bean counting"). "[T]he lodestar

9  calculation can be helpful in suggesting a higher percentage when the litigation has been protracted." *Vizcaino* 290

10 F.3d at 1050. Class Counsel's lodestar to date is **$316,462.50**, reflecting 357.75 hours of attorney time that have

11 been devoted to this case thus far. The lodestar figures are based on hourly rates ranging from $650 to $1,150,

12 which have been accepted by other courts as fair and reasonable. (Setareh Decl., ¶¶ 34-35.)

13        Class Counsel's lodestar to date of $316,462.50 is far more than the $100,000 sought in attorney fees.

14 The fees requested are eminently reasonable in view of "the substantial risk class counsel faced, compounded by

15 the litigation's duration and complexity"—factors that would have justified a significantly higher multiplier under

16 both federal and California law. *Vizcaino*, 290 F.3d at 1051 (affirming multiplier of 3.65); *Omnivision*, 559

17 F.Supp.2d at 1048 (courts have approved multipliers between 1 and 4); *NCAA*, 2017 WL 6040065 at *7

18 (approving 3.66 multiplier); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can

19 range from 2 to 4 or even higher"); *Chavez*, 162 Cal.App.4th at 66 (2.5 multiplier). In sum, a lodestar cross-

20 check confirms that a fee award of one third of the common fund is reasonable and appropriate in this case.

**8.        An Award of Litigation Costs Should Be Made From the Common Fund**

21

22        In a common fund settlement, Class Counsel are entitled to recover the reasonable expenses incurred in

23 prosecuting the litigation. Fed. R. Civ. P. 23(h); *Omnivision*, 559 F.Supp.2d at 1047. The settlement agreement

24 provided for litigation costs up to $55,000. (Agreement ¶15(b).) Plaintiff has actually incurred costs of $**17,858.29**

25 in this matter, including filing fees, mediation fees, expert costs, Westlaw charges, travel charges, and PACER

26 charges. (Setareh Decl., ¶ 30.) All of these costs were reasonably incurred in the prosecution of this matter over

27 the past seven years and benefitted the class. The Court is respectfully asked to award $**17,858.29** in costs.

28

1    **C.    The Enhancement Award Is Reasonable**

2         Enhancement award serves to reward the named plaintiffs for the time and effort expended on behalf of

3    the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive

4    awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course

5    of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern*

6    *Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).   In *Coca-Cola*, for example, the court

7    approved enhancement awards of $300,000 to each named plaintiff in recognition of the services they provided

8    to the class by responding to discovery, participating in the mediation process and taking the risk of stepping

9    forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F.

10   Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

11        Plaintiff's counsel requests that the Court grant an enhancement award of $10,000 to Estate of Robert W.

12   Ahlstrom through Kianna Ahlstrom as Class Representative. (Agreement ¶ 13.) The amount of the enhancement

13   award requested for Plaintiff is reasonable given the risks undertaken. (Setareh Decl. ¶ 46.) Taking the risk of

14   filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.

15   Plaintiff Robert Ahlstrom was actively involved in the litigation of this Action prior to his passing. (Declaration

16   of Kianna Ahlstrom ¶ 3). Plaintiff undertook to prosecute the cases despite the risk of a cost judgment, and despite

17   the potential risk that prospective employers would hold it against him. (*Id.* ¶ 12). The requested enhancement

18   award is reasonable and should be approved.

19   **D.    The Settlement Administrator's Expenses Should Be Approved**

20        The total cost for the administration of this Settlement is estimated to be $3,500. (Hernandez Decl., ¶ 17.)

21   ILYM's costs to administer this settlement match the estimated costs in the settlement agreement, are reasonable

22   and should be approved. (Agreement, ¶ 16); (Setareh Decl. ¶ 47).

23   **VI.    CONCLUSION**

24        For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the

25   Settlement and the requested attorneys' fees, reimbursement of costs, and enhancement award for Plaintiff.

26

27

28

1   DATED:  December 12, 2024          SETAREH LAW GROUP

2

3                                      */s/ Farrah Grant*
                                       SHAUN SETAREH
4                                      THOMAS SEGAL
                                       FARRAH GRANT
5                                      Attorneys for Plaintiff
                                       Robert Ahlstrom

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NTC OF MTN, MTN FOR FINAL APPROVAL, FEES,
                                       COSTS, ENHANCEMENT AWARD; MEMO ISO